```
┌──────────────────────────────────────┐
│ U.S. DISTRICT COURT - N.D. OF N.Y.    │
│ ┌──────────────────────────────────┐  │
│ │        FILED                     │  │
│ │     OCT - 9 2008                 │  │
│ └──────────────────────────────────┘  │
│ AT_____ O'CLOCK_____                  │
│ Lawrence K. Baerman, Clerk - Syracuse │
└──────────────────────────────────────┘
```

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

*******************************

UNITED STATES OF AMERICA

                                      Criminal Action No.

    v.                                   5:07-CR-443 (NAM)

EFRAIN ROSA,                       PLEA  AGREEMENT

                Defendant.

*******************************

ANDREW T. BAXTER, Acting United States Attorney for the Northern District of New York (by Lisa M. Fletcher, appearing) and EFRAIN ROSA (with Lisa A. Peebles, Esq., appearing) hereby enter into the following Plea Agreement regarding the disposition of certain criminal charges against the Defendant:

1.      **Defendant's Promises.**  In return for the consideration described below, EFRAIN ROSA agrees as follows:

      a.      The defendant will withdraw his previous plea of "Not Guilty" and enter a plea of "Guilty" to Counts 1, 2, 3, and 4 of Indictment 07-CR-443, Counts 1, 2 and 3 charging him with knowingly employing, using, persuading, inducing, enticing and coercing persons under the age of eighteen to engage in sexually explicit conduct, and the lascivious exhibition of the genitals and the pubic area of said minors, for the purpose of producing visual depictions of such conduct, where the visual depictions were produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce, in violation of Title 18, United States Code, Section 2251(a), and Count 4 charging him with knowingly intimidating, corruptly persuading, and engaging in

misleading conduct toward another person with intent to influence the testimony of said person in an official proceeding, that being the criminal prosecution and trial of the defendant in Criminal Action No. 07-CR-443, in violation of Title 18, United States Code, Section 1512 (b)(1).

      b.     The defendant consents to the entry of an order directing him to forfeit certain assets to the United States, pursuant to the Forfeiture Allegations in the Indictment, as more fully set forth below.

     2.     **Potential Penalties.** EFRAIN ROSA understands that his guilty plea to Counts 1 - 4 of the Indictment will subject him to the following potential penalties:

      a.     As to each of Counts 1, 2, and 3:

        i.     Maximum Term of Imprisonment: 30 years.  (18 U.S.C. § 2251(e)).

        ii.     Mandatory Minimum Term of Imprisonment: 15 years.  (18 U.S.C. § 2251(e)).

        iii.     Supervised Release:  In addition to imposing any other penalty, the sentencing Court must require the defendant to serve a term of supervised release of any term of years, not less than 5, or life, to begin at the expiration of any term of imprisonment imposed upon him.  (18 U.S.C. §3583(k)).  Should the defendant be placed on a term of supervised release and subsequently violate any of the terms and conditions of that release before the expiration of such term, he may be sentenced to up to 3 years imprisonment in addition to any prison term previously imposed upon him and in addition to the statutory maximum term of imprisonment set forth above. Under some circumstances, the Court may also extend the term of supervised release, and it may modify, reduce, or enlarge the conditions of such release.

iv.     As the defendant is an offender required to register under the Sex Offender Registration and Notification Act -- if while on supervised release he commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed, the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment of not less than 5 years on the violation.

v.      <u>Maximum Fine</u>:  $250,000.  U.S.C. § 3571(b).

vi.     <u>Forfeiture</u>:  The sentence imposed by the Court will include an order of forfeiture, as more fully set forth below.  (18 U.S.C. § 2253)

vii.    <u>Required Registration for Sex Offenders</u>:  The defendant, as a result of his conviction in this case, must register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the he is an employee, and where the he is a student.  For initial registration purposes, the defendant must also register in New York as a result of this conviction, even if he resides in a different jurisdiction.  A sex offender who knowingly fails to register or update a required registration may be subject to prosecution under 18 U.S.C. § 2250, and face a penalty of up to ten years imprisonment.

b.      As to Count 4:

i.      <u>Maximum Term of Imprisonment</u>: 30 years.  (18 U.S.C. § 1512(j)).

ii.     <u>Supervised Release</u>: In addition to imposing any other penalty, the sentencing Court may require the defendant to serve a term of supervised release of up to 5 years, to begin at the expiration of any term of imprisonment imposed upon him.  (18 U.S.C. § 3583) Should the defendant be placed on a term of supervised release and subsequently violate any of the terms and conditions of that release before the expiration of such term, he may be sentenced to up

3

to 3 years imprisonment in addition to any prison term previously imposed upon him and in addition to the statutory maximum term of imprisonment set forth above.  Under some circumstances, the Court may also extend the term of supervised release, and it may modify, reduce, or enlarge the conditions of such release.

     iii. <u>Maximum Fine</u>: $250,000.  U.S.C. § 3571(b).

   c. As to Counts 1, 2, 3, and 4:

     i. <u>Special Assessment</u>:  The defendant will be required to pay an assessment of $400, which is due and payable at the time of sentencing.  (18 U.S.C. § 3013)  The defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $$, payable to the U.S. District Court at the time of his sentencing.

     ii. <u>Interest and Penalties</u>:  Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the defendant's sentence, from as early as the date of sentencing.

     iii. <u>Collateral Consequences</u>:  Conviction of a felony may result in the loss of certain civil rights, including, but not limited to, the right to vote or the right to possess firearms.

   3. **<u>Forfeiture</u>.** The defendant hereby forfeits to the United States any interest in any personal property used or intended to be used to commit or to promote commission of the offenses charged in the Indictment, pursuant to Title 18 U.S.C. § 2253(a), including, but not limited to:

    (a) one Compaq EVO computer, serial number P106X420BC12XOL;
    (b) one Fujitsu MPE3136AT hard drive, serial number 30KTT401046595;
    (c) one USB flash drive;
    (d) one Concord digital camera;
    (e) one Memorex CD-R, labeled DVD X-2;
    (f) one Memorex CD-R, labeled 5X;
    (g) one Memorex CD-R, labeled X;

(h)     one Verbatim CD-R, labeled Saved Files;
(i)     one Memorex CD-R, labeled X-1;
(j)     one SAST CD-R, labeled Tools Programs;
(k)     one generic CD-R, labeled Limewire 1;
(l)     one Memorex CD-R, labeled DVD X-1; and
(m)    one floppy diskette, unlabeled.

a.      The defendant consents to the entry of an order of forfeiture of the above property;

b.      Forfeiture of defendant's assets will not satisfy all, or any portion of, a fine, restitution or other penalty that the Court may impose upon the defendant in addition to forfeiture;

c.      The defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable asset, including but not limited to surrendering title; completing any document or legal proceedings required to transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court;

d.      The defendant waives all rights to a jury trial on the forfeiture of assets.  The defendant waives all Constitutional, legal and equitable defenses to the forfeiture of assets, as provided by this Agreement, in any proceeding, including but not limited to any jeopardy defense or claim of double jeopardy or any claim or defense under the Eighth Amendment of the United States Constitution, including any claim of an excessive fine;

e.      The defendant represents and warrants that he has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this Plea Agreement, other than that listed in the Forfeiture Allegation of the Indictment;

5

f.     In the event the U.S. Attorney's Office determines that the defendant has breached any condition of this Agreement, the defendant agrees that none of the forfeited property shall be returned to him, nor shall he assert any claim to the forfeited property. The defendant shall not reacquire any forfeited property, directly or indirectly, through family members, nominees, friends or associates.

4.     **Sentencing Factors.** EFRAIN ROSA understands that the sentence to be imposed upon him is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder, as modified by *United States v. Booker*, 543 U.S. 220 (2005). While the Court is not ultimately bound to impose a sentence within the applicable Sentencing Guidelines range, it must take into account the Sentencing Guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

5.     **Elements of the Offense.** EFRAIN ROSA understands the following legal elements of the offenses stated in Counts 1, 2, 3, and 4 of the Indictment, and admits that those elements accurately describe his criminal conduct:

a.     As to Counts 1, 2, and 3:

i.     First:   That the defendant knowingly employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct;

ii.     Second: That the defendant's actions were for the purpose of producing visual depiction(s) of such conduct; and

iii.     Third: That such visual depiction(s) was/were produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce.

6

    b.    As to Count 4:

        i.    <u>First</u>:  That the defendant knowingly used intimidation, threats or corrupt persuasion against another person; and

        ii.    <u>Second</u>: That the defendant did so with intent to influence the testimony of that person in an official proceeding.

6.    **Factual Basis for the Plea.**  EFRAIN ROSA admits the following facts, which establish his guilt with respect to the offenses stated in Counts 1, 2, 3, and 4 of the Indictment:

    a.    On September 26, 2007, Deputy John Burke of the Oswego County Sheriff's Office was dispatched to an apartment complex in Fulton, New York.  There he spoke with two women who reported that their sons (V-1, a 9 year old boy  and V-2, an 11 year old boy) had disclosed being sexually abused by a neighbor know to them as "J." "J," it was determined, was defendant EFRAIN ROSA, who prefers to be called by his middle initial, J.

    b.    Deputy Burke also spoke with the boys and obtained details of the abuse from them.  One of the minors told Deputy Burke that ROSA had taken naked pictures of him, and of other children, and that ROSA put the pictures on his (ROSA'S) home computer.  This child reported that ROSA had engaged in anal sex with him on several different occasions, with the most recent occasion being September 26, 2007.  The second minor child disclosed that he too was sexually abused by ROSA, and that ROSA had also taken nude photos of him.

    c.    As a result of the information gathered by Deputy Burke, Oswego County Sheriff's Investigator Bryan Blake applied for a search warrant for the Fulton residence of defendant EFRAIN ROSA.  While the search was being executed, ROSA was taken to the Oswego County Sheriff's Office and interviewed.

d.      Following discussions with ROSA, Deputy John Burke took a short written statement from ROSA, in which ROSA admitted the sexual abuse of V-1 and V-2, and that there were naked photographs of the boys.  ROSA also admitted that he downloaded child pornography onto his computer.

e.      ROSA next spoke with Lt. Kenneth Pitcher, providing additional detail, including disclosure of the forcible sexual abuse of a child, possession of child pornography, and production by him of child pornography  Lt. Pitcher then assigned Inv. Randall Pitcher to continue the interview of ROSA.

f.      Inv. Randall Pitcher then spoke with ROSA further to get additional detail, which ultimately led to Inv. Pitcher obtaining a ten-page written statement from ROSA in which the defendant admitted downloading images of child pornography from the Internet, sexually abusing V-1, V-2, as well as V-3, a 4 year old boy, and V-4, an 8 year old boy.  ROSA admitted taking nude pictures of V-1 and V-4, and admitted taking pictures of his abuse of V-3.

g.      While ROSA was being interviewed, his residence was being searched pursuant to the search warrant obtained by Inv. Blake.  Among the evidence discovered in that search were a Concord Digital camera, which bears a label stating that it was made in China, a Compaq EVO computer, a Fujitsu hard drive, a USB flash drive, numerous compact disks, floppy diskettes, a handgun, ammunition, marijuana, a digital scale, and a marijuana smoking pipe.

h.      Contact sheets of images found on the defendant's computer depicting the lewd and lascivious exhibition of the genitals of V-1, V-3, and V-4, as well as sexually explicit conduct involving each of the three victims were shown to ROSA by Inv. Randall Pitcher.  ROSA acknowledged that each of the images was his, and initialed them.

8

i.      Inv. Blake has performed a forensic analysis of ROSA's computers and related media. Located on these various forms of media are, collectively, several thousand images, and well over 100 videos of child pornography. Included within these figures are images located in three file folders on the Compaq EVO computer in the following location: "WINNT\System32\New Folder\Folder\." Each of these folders were labeled with a single first name, each of those being the names of V-1, V-3, and V-4, the three victims who are the subject of Counts 1, 2, and 3 of the Indictment.

The file labeled with the name of the V-1 contains nineteen images, including the following:

(1)     IMG00384: This is a non-pornographic image that depicts ROSA from the shoulders up without a shirt on standing next to V-1, who is also not wearing a shirt. Both ROSA'S and the child's faces are clearly visible in the image.

(2)     IMG00007: This image depicts V-1 naked, lying on his back using his hands to display his genitals and anus, the child's face is visible in the image.

(3)     IMG00382: This image depicts V-1, naked, lying on his back with his genitals exposed. A portion of the hand of an adult male can be seen on the child's right thigh.

The file labeled with the name of the V-4 contains fifteen (15) images, including the following:

(1)     IMG00119.JPG: This image depicts V-4, naked, with an adult male's penis in his mouth. The child's face is clearly visible in the image.

(2)     IMG00077.JPG: This image depicts V-4, naked, lying on a bed with his legs spread apart with his genitals exposed. Again, the child's face is clearly visible in the image.

The file labeled with the name of V-3 contains thirteen (13) images, including the following:

(1)     IMG00011.JPG:  This image depicts V-3, naked, lying on a bed and sleeping with his arms next to his head.  His legs are spread apart and his genitals are exposed.  The child's face is clearly visible in the image.

(2)     IMG00019.JPG:  This image depicts V-3, with his genitals exposed and a naked adult male with his penis between the legs of the child.  Although the child's face is not visible in the image, the image was found in the folder labeled with V-3's name, and the image is consistent with the statement given by ROSA to Investigator Pitcher in which ROSA stated that he "ended up putting [his] penis between [V'3]'s legs and taking a picture."

j.      As a part of his forensic analysis, Investigator Blake was able to access the EXIF data[1] contained in many of the images of the victims.  The EXIF data indicates that the digital camera used to create the images was made by Concord Camera Corporation.  The digital camera seized from ROSA'S residence pursuant to the execution of a search warrant at that location was a Concord Digital camera.  Still in the memory of that camera, when it was seized, were several pornographic images of V-1, including two non-pornographic images in which V-1's and ROSA's faces are clearly shown.  Copies of these images were also contained on ROSA's computer in the above-described folder labeled with V-1's name.

k.      On September 27, 2007 ROSA was arrested on New York State sex offense violations.  On October 5, 2007 he was arrested and charged with production of child pornography in violation of 18 U.S.C. §2251.  Shortly after his federal arrest, the defendant, in numerous recorded

---

[1]  Digital cameras save JPEG (.jpg) files with EXIF (Exchangeable Image File) data. Camera settings and scene information are recorded by the camera into the image file. Examples of stored information are shutter speed, date and time, focal length, exposure compensation, metering pattern and if a flash was used.

conversations from both the Onondaga County Justice Center, and the Onondaga County Correctional Facility in Jamesville, engaged in a series of telephone calls with a 12 year old child (hereinafter "child") in which he urged and influenced the child to falsely claim responsibility for producing the child pornography involving V-1, V-3 and V-4, and to falsely claim that others, and not the defendant, were also involved in producing the images.   ROSA explained to the child that if he did this, the child would only get counseling, and the defendant would get out of jail so they could become a family again.

       i.     For example, the following is an excerpt of a call placed by ROSA to the child on October 20, 2007:

ROSA:  Yeah, I may I may need you to say that you did something

CHILD:  Wait...what?

ROSA:  I may need you to say that you had done something

CHILD:  Me?

ROSA:  Yeah

CHILD:  That I did something?

ROSA:  Yup

CHILD:  Like what do you mean?

ROSA:  Oh well if you say it...that you did it...that I didn't do it..then at best all they will give you a spanking and they'll let daddy out

CHILD:  Then where are they gonna put me?

ROSA:  Oh you know well you're a kid so they wouldn't do anything to you.  You'd have to... you know how you have to go to CAC and talk to people..that's it...that's all you'd have to do

CHILD:  But it's right there they got the pictures....they know they're from you

11

ROSA: Aw....not all of them.  So..

CHILD: Well I'm gonna have to think of something

ROSA: Oh...I'll talk to you more on it

CHILD: Ok

ROSA: 'Cause I don't want you to get in trouble

CHILD: Right

ROSA: I'm trying to protect you....so......you know we'll figure out something here.  I guess I gotta talk with people first and find out

CHILD: Umhuh

ROSA: I don't want you getting into any more trouble

CHILD: huh?

ROSA: I don't want you to get in more trouble...more than what I'm in.  Hell if I thought all that they could do is give you a spanking....then go bad boy and you have to talk to people then that would be it.

CHILD: I'd have a counselor and

ROSA: Alright....that wouldn't be too bad would it?

CHILD: No

ROSA: So...but we gotta (unintel.) I know you'd probably help me out right?

CHILD: Uhuh

ROSA: To get daddy out of here

CHILD: Yup

    ii.  And the following are excerpts from a conversation between ROSA

and the child on October 21, 2007:

ROSA: I gotta talk to somebody tomorrow or sometime this week....know what I'm saying?

CHILD: Umhuh

ROSA: Then they'll give you a call and ask you things

CHILD: Ok

ROSA: If you took the pictures or not

CHILD: (unintel.)

ROSA: Alright I mean I mean if you took pictures

CHILD: Oh

ROSA: And put them on my computer

CHILD: Put them on your computer?

ROSA: Yup

CHILD: How?

ROSA: When you were using my camera and my computer (noise in background) Are you there?

CHILD: Yeah

ROSA: Ok.  Now umm...I'm gonna I'm gonna talk to a

CHILD: How could I use your....how can I

ROSA: when

CHILD: ...use your camera .....if I don't have it?

ROSA: When we had it....when we were living together

CHILD: Yeah

ROSA: You took some pictures on....with the camera right?

CHILD: Who did

ROSA:  You did

CHILD:  Take what pictures

ROSA:  Oh  pictures of [V-3], pictures of [V-1], pictures of [V-4] and

CHILD:  Why did I do that?

ROSA:  Well they'll only give you a counselor.....but I gotta find out first

CHILD:  Ok

                    *        *        *

ROSA:  But they ask you.....they might show you some pictures and say "did you take these"....and
if they do....you just gotta say yes...

                    *        *        *

ROSA:  Well.....but I just need you to be able to help me out this time again

CHILD:  Umhuh

ROSA:  Ok

CHILD:  Umhuh

ROSA:  And....once we get it all straightened out and daddy gets out...then we'll get everything all
taken care of and hopefully we can be a family again sometime.

CHILD:  Umhuh

ROSA:  Right?

CHILD:  Umhuh

ROSA:  Cool...so like I said I'll just need you to say certain things at times...kinda like what we did
with Rich

CHILD:  Ok

ROSA:  Ok

14

CHILD: Umhuh

ROSA: Like I said that worst thing that could happen is you'll have to get a counselor....but that ain't too bad right?

CHILD: Umhuh

ROSA: You've done that before....hell......but I gotta find out first ok?

CHILD: Umhuh

ROSA: Well...I need ya....so if they call you or ask you about it you just gotta say that yes you did it...ok?

CHILD: Yup

ROSA: And that I just didn't want you to get in trouble

CHILD: (sigh)

ROSA: Ok?

CHILD: Umhuh

1.     As a result of the defendant's requests and influence, the child wrote more than one letter, addressed to the defendant, falsely claiming responsibility for the crimes -- letters which the defendant's father then took to the Oswego County Sheriff's Office and presented to investigators as evidence purporting to absolve the defendant of responsibility for his crimes. In investigating the claim that the child was responsible, agents obtained all of ROSA's recorded inmate phone conversations, including those excerpted above. Those calls, and other evidence gathered in the case, make it clear that ROSA concocted the defense to falsely pass blame to the child, that he encouraged the child to actively put forth the defense, and that he obtained the assistance of his parents (wittingly or otherwise) in promoting the defense to authorities.

15

m.     The defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the Defendant or stipulated by the parties.  In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay.  The defendant agrees that his sentence may be determined based upon such judicial fact-finding.

7.     **Use of Defendant's Admissions.** The United States agrees that should the defendant prevail on an appeal of the issues specifically preserved for appeal under paragraph 17 of this Agreement, the statements made by him in signing this Agreement, including the factual admissions set forth above, will not be used against the defendant by the United States in any subsequent criminal proceeding.  However, the defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth above, shall otherwise be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceeding, even if he fails to enter a guilty plea pursuant to this Agreement, or if such a guilty plea is later vacated or withdrawn. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent these rules are inconsistent with this paragraph or with this Agreement generally.

8.     **Collection of Financial Obligations.** In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which he  has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

a.     The defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful.

b.     The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on him in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

9.     **Government's Promises and Reservation of Rights.**  In exchange for the pleas of guilty to Counts 1, 2, 3, and 4 of the Indictment by EFRAIN ROSA, and his continuing compliance with all of the terms of this Plea Agreement, the United States Attorney's Office for the Northern District of New York agrees as follows:

a.     At the time of sentencing, it will move to dismiss the remaining charges against the defendant in Indictment 07-CR-443 for so long as the guilty plea and sentence on Counts 1 - 4 remain in effect.

b.     It will bring no further federal criminal charges against the defendant relating to the conduct in the Northern District of New York, committed before the date of this Agreement, which is described in Counts 1 - 19 of the Indictment, and the defendant's admissions above for so long as the guilty plea and sentence on Counts 1, 2, 3, and 4 remain in effect.

c.     If the guilty plea to any or all of Counts 1, 2, 3, or 4 are later withdrawn or vacated, any charges dismissed or not prosecuted pursuant to subparagraphs 9a and 9b of this Agreement may be filed and prosecuted, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the filing of any such charges. The defendant waives any

17

defense or objection to the filing and prosecution of any such charges that are not time-barred by the applicable statute of limitations as of the date of this Agreement.

        d.    It reserves the right to recommend a specific sentence within the applicable Guidelines range determined by the Court.

        e.    The U.S. Attorney's Office reserves the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within Counts 1 - 4 of the Indictment.

    10.    **Stipulations.**  The parties have not entered into any stipulations in this matter.

    11.    **Preliminary Sentencing Guidelines Estimates.** The defendant understands that any estimate of the defendant's total offense level, criminal history score, and/or Sentencing Guidelines range provided before sentencing is preliminary and is not binding on the parties to this Agreement, the Probation Office, or the Court.

    12.    **Remedies for Breach.**  Should the U.S. Attorney's Office determine that the defendant, after the date of this Plea Agreement, (i) has committed any further crime, (ii) has given false, incomplete, or misleading testimony or information; or (iii) has [otherwise] breached any condition of this Agreement, the U.S. Attorney's Office will have the right, in its sole discretion, to void this Agreement, in whole or in part. In the event of any such breach, the defendant will not be permitted to withdraw his guilty plea under this Agreement, but will thereafter be subject to prosecution for any federal criminal violation of which the U.S. Attorney's Office has knowledge, including but not limited to charges that this Office has agreed to dismiss or has agreed not to prosecute in subparagraphs 9a and 9b of this Agreement.

18

a.     The defendant waives any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date of this Agreement, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of any such prosecution.

b.     Moreover, in connection with any such prosecution, any information, statement, or testimony provided by the defendant, and all leads derived therefrom, may be used against him, without limitation. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent these rules are inconsistent with this paragraph or with this Agreement generally.

13.     **Limitations on Agreement.** This Agreement is limited to the U.S. Attorney's Office for the Northern District of New York and cannot bind other federal, state or local prosecuting authorities. Furthermore, this Agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability or proceedings relating to the forfeiture of assets.

14.     **Agreement Not Binding on the Court.** The Court is neither a party to, nor bound by this Agreement. The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the U.S. Probation Office.

a.     The Court is not bound by any recommendation, or request made by the parties, pursuant to Fed. R. Crim. P. 11(c)(1)(B), as to the appropriate sentence, and the defendant may not withdraw his plea of guilty if the Court declines to follow any such recommendation or request. The U.S. Attorney's Office reserves the right to support and defend, in connection with any

19

post-sentencing proceedings, any decision the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with this Office's recommendations or requests.

15.    **Waiver of Defendant's Rights.** The defendant acknowledges that he has read each of the provisions of the entire Plea Agreement with the assistance of counsel and understands its provisions. The defendant further acknowledges that his plea is voluntary and did not result from any force, threat, or promises (other than the promises in this Plea Agreement).

   a.    The defendant understands his right to assistance of counsel at every stage of the proceeding and has discussed his constitutional and other rights with defense counsel. The defendant understands that by entering a plea of guilty, he will be giving up his rights (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present evidence in his defense; and (vi) to remain silent and refuse to be a witness against himself by asserting the privilege against self-incrimination.

   b.    The defendant has been advised by defense counsel of the nature of the charges to which he is entering a guilty plea and the nature and range of the possible sentence. The defendant understands the sentencing Court's obligation to consider the United States Sentencing Guidelines (as explained further above) and the Court's discretion to depart from those Guidelines under some circumstances or otherwise to impose a reasonable sentence outside of the applicable Sentencing Guidelines range.

16.    **Waiver of Collateral Attack.** The defendant acknowledges that, after consultation with defense counsel, he fully understands the extent of his rights to collaterally attack the conviction

and sentence in this case. The defendant waives any and all rights, including those conferred by 28 U.S.C. § 2255, collaterally attack his conviction.

17.   **Preservation of Right to Appeal Specified Issues**. The defendant preserves his right to appeal the following parts of the District Court's Bench Decision rendered on August 6, 2008:

      i.     Denial of motion to suppress post-arrest statements; and

      ii.    Denial of motion to suppress evidence obtained by search warrant.

18.   **Memorialization of Agreement.** No promises, agreements or conditions other than those set forth in this Agreement will be effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court. This Agreement, to become effective, must be signed by all of the parties listed below.

ANDREW T. BAXTER
United States Attorney
Northern District of New York

Dated: Oct 9 , 2008      By:

Lisa M. Fletcher
Assistant U.S. Attorney
Bar Roll No. 510187

Dated: OCt 9 , 2008

EFRAIN ROSA
Defendant

21

Dated: _October 9_____, 2008

Lisa A. Peebles, Esq.
Attorney for Defendant
Bar Roll No. _507041_